ESTATE OF ELIZABETH G. HUGHAN, DECEASED, JOHN W. HUGHAN, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Hughan v. Commissioner
Docket No. 23221-88
United States Tax Court
T.C. Memo 1991-275; 1991 Tax Ct. Memo LEXIS 316; 61 T.C.M. (CCH) 2932; T.C.M. (RIA) 91275; June 17, 1991, Filed *316 Decision will be entered under Rule 155. Carl F. Lowthorp, Jr., for the petitioner. Gordon L. Gidlund, for the respondent. CLAPP, Judge. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 194,294 in decedent's Federal estate tax. The issue for decision is the special use valuation of 41.37 acres of agricultural real property in Ventura County, California, on the date of decedent's death. All section references are to the Internal Revenue Code of 1954 as amended and in effect on the date of decedent's death. All Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT We incorporate by reference the stipulation of facts and attached exhibits. Petitioner is the Estate of Elizabeth G. Hughan (decedent). Decedent was a resident of Camarillo, California, when she died on October 12, 1984. John W. Hughan (executor) is the duly appointed executor of decedent's estate. On September 8, 1988, the date the petition in this case was filed, the executor resided in Camarillo, California. The executor timely filed decedent's Federal estate tax return (Form 706). The executor, as a part of Form 706, made *317 a valid election to value 41.37 acres of agricultural real property located at 1354 South Lewis Road, Camarillo, California, under the provisions of section 2032A. Pursuant to this section, the executor listed this agricultural property on Schedule A of Form 706 as having a special use value of $ 167,500 and a fair market value of $ 479,000. The property was devoted primarily to orchards, but 8 acres were used for row crops, 6 acres were undeveloped, and 1.37 acres contained dwelling and ranch buildings. The property is located in Ventura County, California, which is contiguous to and generally northerly of Los Angeles County, California. The Ventura County General Plan designated the property as "Agricultural Exclusive." At the time of decedent's death, Los Angeles County had the largest population of any county in California. At the time of decedent's death, title to the property was encumbered by a Williamson Act contract. The Williamson Act, or California Land Conservation Act of 1965, provides for agreements between landowners and a county limiting the use of the land to production of agricultural commodities in return for preferential tax assessments. It was designed *318 to conserve irreplaceable agricultural lands and to eliminate socio-economic problems associated with urban sprawl. A Williamson Act contract has an initial term of no less than 10 years. Each contract provides that on the anniversary date of the contract, a year shall be added to the initial term unless notice of nonrenewal is given. The terms of a Williamson Act contract are binding upon all successors in interest of the landowner. There are penalties assessable against the property owner upon cancellation of a Williamson Act contract. The use value assessment of decedent's property pursuant to California's Williamson Act, as determined by Ventura County assessors, was $ 215,012 at the date of decedent's death. ULTIMATE FINDING OF FACT The special use value of decedent's agricultural real property on October 12, 1984, the date of decedent's death, was $ 218,283. OPINION The only issue for decision is the special use valuation of decedent's agricultural real property. The pertinent provisions of section 2032A were adopted as a part of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1520, to encourage the continued use of property for farming and other small business *319 purposes by reducing the tax burden upon such property. H. Rept. No. 94-1380 (1976), 1976-3 C.B. (Vol. 3) 755, 756; S. Rept. No. 94-938 (Part 2) (1976), 1976-3 C.B. (Vol. 3) 657. Section 2032A provides that, if certain conditions are satisfied, real property includable in a decedent's gross estate that was used for farming purposes may be valued on the basis of its current use value rather than its fair market value. ; . In determining special value based on use, section 2032A provides several methods for valuing farms. The parties agree that the valuation of decedent's property is governed by the method prescribed by section 2032A(e)(8). Under this method, the following factors shall apply in determining the value of qualified real property: (A) The capitalization of income which the property can be expected to yield; (B) the capitalization of fair rental value; (C) the assessed land value in a State which provides a use value assessment law for farmland; (D) comparable sales of other farmland in the *320 same geographical area far enough removed from a metropolitan or resort area so that nonagricultural use is not a significant factor in the sales price; and (E) any other factor which fairly values the farm. Sec. 2032A(e)(8). Respondent has conceded the values proposed by petitioner pursuant to section 2032A(e)(8)(A), the capitalization of income factor, and pursuant to section 2032A(e)(8)(C), the assessed land value factor. Thus, the agreed-upon values under subparagraphs (A) and (C) are $ 197,830 and $ 215,012, respectively. It remains for this Court to decide whether the capitalization of fair rental value factor (subparagraph (B)) and "any other factor" (subparagraph (E)) are relevant, and whether the sales prices of agricultural property in Ventura County are affected by nonagricultural use, thus requiring the parties to compare sales of farmland located outside the vicinity of decedent's property (subparagraph (D)). The legislative history of section 2032A(e)(8) provides that all relevant facts are taken into account when this multiple factor method of valuation is elected. See S. Rept. No. 94-938 (Part 2) (1976), 1976-3 C.B. (Vol. 3) 643, 657. Respondent's *321 expert found that the capitalization of fair rental value factor, section 2032A(8)(B), was not relevant to his determination of special use value because decedent's farmland was largely devoted to orchard crops, and farmland with orchard crops is very seldom rented. Therefore, he concluded that there was no dependable information upon which to apply a capitalization rate. Petitioner's expert, however, did consider this factor. Upon "converting" decedent's property to row crop property, he found that it had a fair rental value of $ 575 per acre, based on data pertaining to farmland with row crops. Because the parties agree that orchard properties typically do not generate rents and because a majority of decedent's property was devoted to orchard crops, we find that the capitalization of fair rental value factor (subparagraph (B)) is not relevant in determining the special use value of decedent's property. Respondent's expert did not find "any other factor" under section 2032A(e)(8)(E) that he considered to be relevant and, accordingly, ignored subparagraph (E) in his opinion. Petitioner's expert testified that the amount he determined under the "any other factor" (subparagraph *322 (E)) was based on fair rental values. For the reasons set forth above with respect to subparagraph (B), we do not consider this approach appropriate. Accordingly, we find that this subparagraph (E) is not relevant to a determination of special use value. We now turn to the principal substantive area of disagreement between the parties, namely, what farmland should be used to provide "comparable sales" information, as required by section 2032A(8)(D). The question for the Court to answer is how far from decedent's property the parties must go to find farmland the sales prices of which is not affected by nonagricultural use. The language of section 2032A provides no bright-line test. There is no language in the legislative history or in the regulations specifying how far away the comparable sales of other farmland must be from the land to be valued. The regulations providing guidance for section 2032A(e)(7) state that comparable real property must be situated in the same locality as the specially valued property; however, this requirement is not to be viewed in terms of mileage or political divisions alone. Sec. 20.2032A-4(d), Estate Tax Regs. Respondent's expert witness, Edwin *323 Nutt (Mr. Nutt), is a real estate appraiser with 30 years' experience appraising property in Ventura County and is a senior member of the American Society of Appraisers. Mr. Nutt compared the sales of 10 properties, all of which were located within a 5-mile radius of decedent's property, to arrive at a comparable sales value of $ 536,800. These 10 properties were all orchards and the sales occurred between December 1983 and February 1985. All of the properties used by Mr. Nutt were designated as "Agricultural Exclusive" by the Ventura County General Plan, and some, but not all, were encumbered by Williamson Act contracts. Respondent argues that such restrictions effectively eliminate any purchaser's ability to use the land for any purpose other than agricultural use, and therefore, nonagricultural use was not a significant factor in the sales prices. Petitioner's primary expert, Michael E. Jewett (Mr. Jewett), is a member of the American Society of Farm Managers and Rural Appraisers and has been self-employed for the past 10 years as a fee appraiser, specializing in rural and farm property. Mr. Jewett compared sales of four row crop properties located in Santa Barbara County, *324 which is some 80 to 100 miles away from decedent's property. The sales occurred between March and November 1984. He determined a comparable sales price value of $ 242,006. Although the properties he used were planted with row crops instead of orchards, they had similar soil and topography and similar potential land use to decedent's property. Also, he noted that the orchards planted on decedent's property did not contribute greatly to the total value of the property, and that the Ventura County assessor placed a total value on the orchards of only $ 1,900. Mr. Jewett's report states that Ventura County has experienced "rapid growth" because of its proximity to Los Angeles County, and, as a result, the demand for land has increased and the prices of agricultural properties have appreciated beyond their values for agriculture. In his opinion, the prices of virtually all agricultural property in Ventura County are influenced by this proximity because purchasers are speculating that one day such property will be put to use other than for agricultural purposes. He contends that purchasers are speculating that Ventura County farmland is prime for future urban development, despite *325 county zoning constraints. He opines that this speculation has inflated land values and caused nonagricultural use to be a significant factor in the sales prices. Therefore, pursuant to section 2032A(e)(8)(D), it is necessary to value comparable farms in Santa Barbara County, where nonagricultural use is not a significant factor in the sales prices. Mr. Jewett's opinion is shared by two other experts, Rex Laird (Mr. Laird) and Lindsay Nielson (Mr. Nielson). Both Mr. Laird and Mr. Nielson prepared expert reports and testified at trial on behalf of petitioner. Mr. Nielson is a member of the Society of Real Estate Appraisers and the American Right of Way Association. It is his opinion that because of "metropolitan spillover" from Los Angeles, prices paid for land in Ventura County are two to three times higher than prices paid for equivalent farmland in other regions of California where "urbanization is so far in the future as to be extremely remote and speculative." Mr. Laird, a member of the American Right of Way Association and Executive Director of the Ventura County Farm Bureau, believes that regardless of the county's strident zoning restrictions, buyers of agricultural lands *326 in Ventura County "have in their mind[s] the potential for some alternative use." Once again this Court is faced with the task of resolving differences in the opinions of qualified experts. Once again, we must advise counsel that valuation cases such as this one are more properly suited for the give and take of the settlement process than adjudication. See . However, the parties were unable to resolve their differences and, therefore, the Court must do it for them. We have considered the qualifications and experience of the parties' experts, their particular experience in rural and farm property and in Ventura County, as well as the substance and reasoning of their reports and testimony. Although respondent argues on brief that the statements of Mr. Laird and Mr. Nielson should not be accepted because they are imprecise, anecdotal, and partisan, we conclude that all of the experts were honest and knowledgeable and the information provided by them was very useful. However, we find that petitioner's experts' opinions based on sales prices of comparable farmland in Santa Barbara County are more convincing than *327 that of respondent's expert. . We find particular support from the following conclusion. Respondent's expert testified that, based on the purchase prices of his "comparables," a prospective purchaser of agricultural property in Ventura County in 1984 could expect an annual return of 4.75 percent on his purchase. By contrast, the Ventura County assessor capitalized at a 13- to 20-percent rate of return on agricultural property subject to the Williamson Act in 1984. It is clear that purchasers in Ventura County were anticipating something other than agricultural use for the property. Despite Ventura County's attempts to limit growth and to encourage agricultural use of land, the prices at which farmland in the county were trading could not be justified for agricultural uses only. Therefore, the Court is not persuaded that the comparable sales in Ventura County have not been affected by nonagricultural uses. We find that the prices of farmland in Ventura County have been affected by the locale's proximity to Los Angeles County and "urban sprawl" therefrom. The values of farmland in Santa *328 Barbara County more accurately reflect the worth of decedent's land for purely agricultural purposes, as required by section 2032A(e)(8)(D). Our conclusion is further reinforced by the fact that the assessed land value of decedent's property, $ 215,012, as determined by Ventura County assessors who are familiar with the locale and are assessing a value for agricultural purposes only, falls very close to our ultimate value. Both parties also agreed to an income capitalization value of $ 197,830, which figure is also within a 10-percent range of our finding. The only value that does not fall within a close range is respondent's comparable sales price figure of $ 536,800. We conclude that this figure is an aberration. Respondent's comparable sales price value would be closer if he had used valid comparables that were unaffected by nonagricultural use. Accordingly, by averaging the agreed-upon values under section 2032A(e)(8)(A), $ 197,830, and (C), $ 215,012, and petitioner's value under section 2032A(e)(8)(D), $ 242,006, we find that on October 12, 1984, the special use value of decedent's agricultural real property was $ 218,283. To reflect the foregoing and the concessions *329 of the parties, Decision will be entered under Rule 155.